UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| DANIELLE P., | Case No. 6:23-cv-01825-AR |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**ARMISTEAD, Magistrate Judge**

In this judicial review of the Commissioner's final decision denying Social Security benefits, Danielle P. (last name omitted for privacy) challenges the Administrative Law Judge's evaluation of her subjective symptom testimony and the medical opinions of Kimel A. Limon,

Page 1 – OPINION AND ORDER

Psy.D., and Kimberly Cotton, PMHNP. (Pl.'s Br. at 7.) As explained below, the Commissioner's decision is AFFIRMED.[1]

## ALJ'S DECISION

In denying plaintiff's application for Title XVI Supplemental Security Income (SSI), the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since July 5, 2020, her alleged onset date. (Tr. 20.) At step two, the ALJ determined plaintiff has the following severe impairments: peripheral neuropathy; asthma/chronic obstructive pulmonary disease (COPD); major depressive disorder; obesity; posttraumatic stress disorder (PTSD); generalized anxiety disorder; neurocognitive disorder; lumbar degenerative disc disease with facet arthropathy; and hip osteoarthritis. (Tr. 20.) At step three, the ALJ determined that her impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 20.)

As for the RFC, the ALJ found that plaintiff could perform light work with the following additional limitations:

> [S]he can occasionally lift and carry up to 20 pounds and frequently lift and carry 10 pounds or less. She can sit for six hours of an eight-hour day and stand or walk in combination for no more than six hours of an eight-hour day. She can push and pull as much as she can lift and carry. The ability to climb ramps and stairs can be done occasionally, but the claimant must avoid ladders, ropes, or scaffolds. The claimant may only occasionally stoop, kneel, crouch, or crawl. The ability to understand, remember, and carry out instructions is limited to performing simple, routine, and repetitive tasks, but not at a production pace rate (e.g., assembly line

---

[1] This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and the parties have consented to jurisdiction by magistrate judge under 28 U.S.C. § 636(c).

[2] To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

Page 2 – OPINION AND ORDER

work). Use of judgment is limited to simple work-related decisions. Interaction with supervisors, coworkers, and the general public can be done no more than occasionally. Dealing with changes in a workplace setting would again be limited to simple work-related decisions. The claimant's time off-task, in addition to normal breaks, is up to 5% scattered throughout a normal workday.

(Tr. 23.) At step four, the ALJ found plaintiff is unable to perform any past relevant work. (Tr. 30.) Considering plaintiff's age, education, work experience, and RFC, the ALJ determined at step five that jobs exist in significant numbers in the national economy that she could perform, including the representative occupations of folder, garment sorter, and bakery worker.[3] (Tr. 31.)

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

A.   ***Subjective Symptom Testimony***

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678

---

[3]    As noted in *White v. Kijakazi*, 44 F.4th 828, 835 (9th Cir. 2022), the SSA has been working on a transition to a new Occupational Information System since 2008. The transition has not yet occurred, and the Ninth Circuit has encouraged the SSA, along with its sister circuits, "to make the transition to a system that more accurately reflects available jobs in the current economy." *Id.*

Page 3 – OPINION AND ORDER

(9th Cir. 2017); 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, absent affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for discounting the claimant's testimony about the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are specific enough to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making those credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.

      At plaintiff's hearing and in function reports, she stated that she cannot work because of her symptoms, including poor memory, anxiety, confusion, pain and swelling in her legs and feet, side effects from her medications, and insomnia. Her condition began to decline after being placed in a medical coma due to complications from an infection. (Tr. 48-49.) Since then, plaintiff has struggled with physical pain, depression, nightmares, and memory loss. (Tr. 50-51.) She gets lost easily when driving and has to use her GPS; she forgets she is cooking and burns food. (Tr. 50-51.) Plaintiff attested that she recently had a friend's mother move in to help her complete household chores. (Tr. 52.)

      The ALJ partially discounted plaintiff's symptom testimony because: (1) objective

Page  4  – OPINION AND ORDER

medical evidence did not support the level of limitation she alleged; (2) her reports of severe mental health symptomology were inconsistent with her limited course of mental health treatment, and (3) her allegations were inconsistent with her daily activities. (Tr. 24-27.) Plaintiff challenges only the ALJ's evaluation of her daily activities.

1.      **Activities of Daily Living**

Plaintiff argues that the ALJ erred in discounting her testimony based on her activities of daily living because the ALJ did not identify any specific activities in which she engaged that were inconsistent with her stated limitations, or that could translate to full-time work. An ALJ may reject symptom allegations that are inconsistent with a claimant's ability to perform normal ADLs. *Smartt v. Kijakazi*, 53 F.4th 489, 499-500 (2022); 20 C.F.R. § 404.1529(c)(3)(i). There are two ways ADLs may support such rejection: (1) the ADLs contravene the claimant's allegations of functional limitations; or (2) the ADLs "meet the threshold for transferrable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally disabling impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1520(a).

In the decision, the ALJ pointed to reports from plaintiff that she can clean and cook for her husband, feed pets and clean litter boxes, has "no problems with personal care, doing chores such as laundry and cooking every day, and driving a car." (Tr. 25.) The ALJ acknowledged that plaintiff's condition "could have potentially deteriorated" from when her function report was completed in May 2021, but concluded this was inconsistent with later activities including "going camping," "housework, cooking/cleaning, and taking care of her mother until mid-2022." (Tr. 25, citing Tr. 2955-56, 3050, 3057.)

Page 5 – OPINION AND ORDER

The ALJ improperly relied on plaintiff's ability to perform household chores and personal care. Although plaintiff's function report does include household chores, shopping, and driving, plaintiff attested to needing assistance to complete most household tasks. Moreover, plaintiff described that she was limited in performing those tasks, and the record reflects that she consistently described these limitations to providers. *See Revels v. Berryhill*, 874 F.3d 648, 667-68 (9th Cir. 2017) (the ALJ erred in relying on the claimant's relatively numerous daily activities, where that claimant consistently described severe limitations in all of her ADLs).

The ALJ's reading of the record as to plaintiff's ability to care for her mother until mid-2022 is also not supported by substantial evidence. Indeed, the almost 4,000-page record contains only one mention of plaintiff assisting her mother, which in context, does not align with the ALJ's interpretation. The record, dated February 28, 2022, states only that "[s]he is doing housekeeping and cooking at home and helping her mother who will be going on hospice, starting today." (Tr. 3050.) Although the record is ambiguous as to how much help plaintiff was providing, that help ended when her mother went into hospice on February 28, 2022, not mid-2022. Thus, the record does not support the ALJ's conclusion that plaintiff was providing long-term care for her mother.

Similarly, there is no explanation as to what plaintiff's role in a camping trip entailed. The record states only that plaintiff "went camping last week" and has no indication as to what, if any, activity plaintiff engaged in. (Tr. 2955.) That one record mentions camping, with no other details, is not a clear and convincing reason to discredit plaintiff's testimony. Thus, the ALJ erred in the analysis of plaintiff's daily activities.

### 2. Other reasons unchallenged by plaintiff

The ALJ did, however, provide clear and convincing reasons supported by substantial

evidence for discounting plaintiff's symptom testimony based on her treatment history and the objective medical evidence. For example, the ALJ noted plaintiff had no clinical findings to support that her neuropathy was severe, including "no EMG/NCS testing, no falls, no ulcers on the feet, and no need for an assistive device." (Tr. 25.) *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (an ALJ may rely on minimal objective medical findings to reject symptom testimony when additional reasons are specified). Rather, plaintiff's physical exams showed full strength, normal gait, and the ability to manipulate small items without difficulty. (Tr. 25, citing Tr. 2785-87.) *See* 20 C.F.R. § 404.1529(c)(4) (ALJs will consider whether there are any inconsistencies in the evidence and the extent to which there are conflicts between your statements and the rest of the evidence).

       The ALJ noted as well that plaintiff reported that her pain medications were controlling her symptoms adequately. (Tr. 25, citing Tr. 2998, 2941.); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (stating that impairments that can be controlled effectively with medication are not disabling). Additionally, the ALJ pointed out that plaintiff had been noncompliant in controlling her diabetes, and continued to smoke cigarettes, despite being told by providers to stop smoking. (Tr. 26, citing Tr. 2844, 2851, 2883, 3772.). SSR 16-3p, 2017 WL 5180304, at *9 (treatment history demonstrating noncompliance suggest the testimony is less consistent with the record). As to plaintiff's mental health, the ALJ pointed out that plaintiff's limited treatment and failure to follow treatment recommendations was inconsistent with her symptom allegations. (Tr. 26, citing Tr. 2924, 2930, 3773.) The above are sufficient to support he ALJ's conclusions as to plaintiff's symptom allegations.

       In summary, although the ALJ improperly analyzed plaintiff's daily activities, the ALJ did provided additional clear and convincing reasons, supported by substantial evidence for

Page 7 – OPINION AND ORDER

rejecting plaintiff's testimony.

**B.**     *Medical Opinion Evidence*

Plaintiff argues the ALJ erred in evaluating the medical opinions of Dr. Limon and Ms. Cotton. The regulations require that ALJs evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c. ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). Supportability is determined by assessing whether the medical source provides explanations and objective medical evidence to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by evaluating how consistent the opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2).

  **1.**     **Kimel A. Limon's Medical Opinion**

Dr. Limon provided a full consultative neuropsychological exam, which listed plaintiff's diagnoses as PTSD and major neurocognitive disorder due to traumatic brain injury without behavioral disturbance. (Tr. 2798). Based on testing performed at her office, Dr. Limon concluded that plaintiff's full-scale IQ (FSIQ) was 67, in the extremely low range. (Tr. 2798.) Dr. Limon concluded that plaintiff would have marked to extreme difficulty remembering and carrying out simple and complex tasks; marked impairment in her ability to sustain concentration, persistence, and pace; marked to extreme impairment in effective social interaction on a consistent and/or independent basis with supervisors, coworkers, and the public; and marked impairment in adaptive functioning. (Tr. 2799-80.) Dr. Limon cited plaintiff's objective test scores for the assessed limitations in understanding, remembering, carrying out,

Page  8  – OPINION AND ORDER

persisting and maintaining pace. For the adaptive limitations, Dr. Limon relied on plaintiff's reports as to her daily functioning. (Tr. 2799-80.).

One reason the ALJ found Dr. Limon's opinion unpersuasive was because it "was a one-time examination, which, while showing low scores on testing, cannot be taken as necessar[ily] representative of the claimant's functionality." (Tr. 27.) The ALJ described the following additional problems he had with Dr. Limon's opinion:

> The mental status examination at this evaluation was largely within normal limits, including a normal attention. The claimant was casually dressed and adequately groomed with good eye contact and cooperative behavior throughout the interview. Her speech was spontaneous and at times she was tangential, but her process of thought was intact, appropriate thought content and no hallucinations. She was oriented and her memory was intact, although she was noted as preoccupied with pain. She had adequate judgment and fair insight. None of these findings support the severe limits opined by Dr. Limon. But also, Dr. Limon's limits are inconsistent with the record as a whole. For example, the claimant has regular doctor or emergency department presentations seen throughout the record but is not observed as disheveled, unbathed, or lacking motivations, except for right after her mother died. Instead, she is regularly described as oriented with appropriate mood and affect. Other exams in the record describe claimant as oriented and alert and/or with normal attention span, mood, and behavior. At the physical consultative exam, the claimant and had an appropriate mood and affect. Her attention and concentration appeared to be normal, her insight appeared to be intact and she was able to follow commands without difficulty.

(Tr. 26-27, citing Tr. 2594, 2621, 2929, 2940, 2950, 2971, 2988, 3007, 3016, 3036, 3045.)

Plaintiff argues that the ALJ improperly rejected Dr. Limon's opinion. Plaintiff first argues that the ALJ's rejection of Dr. Limon's opinion based on it being a one-time examination is inadequate. The court agrees. The Administration regularly relies on these one-time consultative examinations to assess a claimant's physical and mental limitations. For the ALJ to now reject the consultative examination on the theory that it is merely a one-time examination is not consistent with the regulations or Ninth Circuit precedent. 20 C.F.R. § 404.1520c(a). An ALJ may rely on a consultative examiner's opinion if it is supported by clinical tests and an

Page 9 – OPINION AND ORDER

independent examination. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (observing that a "[CE's] opinion alone constitutes substantial evidence, because it rests on his own independent examination of [the claimant].").

Plaintiff next argues that, because the record contains normal mental status examinations, the ALJ improperly rejected Dr. Limon's opinion. In plaintiff's view, the normal mental status exams do not outweigh the objective testing performed by Dr. Limon at the consultative examination. Dr. Limon administered several objective intelligence tests, including WAIS-IV, Wechsler Memory Scale-IV test, the Color Trails 1 and 2 tests, and the Reitan-Indiana Aphasia Screening test. (Tr. 2793.) Dr. Limon detailed supporting explanations for the conclusions she derived from the testing, including the margin of error for testing and the likelihood of accuracy for each test completed. However, as the ALJ pointed out, Dr. Limon's mental status examination contradicts her conclusions as to plaintiff's functional abilities. Indeed, the court agrees that Dr. Limon's examination notes are puzzling, given the conclusions she reached as to plaintiff's limitations. For example, her exam notes stated plaintiff's working, recent, and remote memory were all functioning at the time of her exam. She could recall three unrelated words immediately and after five minutes, and she was able to correctly state her date of birth and social security number. (Tr. 2792.) Plaintiff had an intact fund of knowledge, and her attention, concentration, and persistence were within normal limits. She correctly identified how many eggs were in a dozen, the capital of Oregon, the current President of the United States, where the Statue of Liberty is located, and she correctly spelled 'money' forwards and backwards. (Tr. 2792.) Her abstract thinking was intact, and her social judgment was adequate. (Tr. 2793.) Moreover, the ALJ pointed out that plaintiff was frequently seen at appointments presenting as

Page 10 – OPINION AND ORDER

alert, with normal attention span, mood, and behavior. (Tr. 29, citing Tr. 2593, 2621.) Thus, the ALJ did not err in finding that Dr. Limon's opinion was not supported.

The broader record supports the ALJ's conclusions as there is little to indicate that the functional limitations assessed by Dr. Limon are accurate. Although the objective testing performed by Dr. Limon indicates that plaintiff is severely limited, these results conflict with the record which shows that plaintiff has some cognitive difficulties, but not to the extent alleged in Dr. Limon's report. Moreover, the ALJ is responsible "for determining credibility, resolving conflicts in the medical testimony, and resolving ambiguities." *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). Thus, the court defers to the ALJ's interpretation of the conflicts between the results of the objective testing, Dr. Limon's treatment notes, and the record as a whole.

### 2. Kimberly Cotton, PMHNP

Ms. Cotton submitted two medical opinion forms in support of plaintiff's disability application. The first opinion, dated October 4, 2021, described plaintiff's symptoms: low energy, lack of motivation, poor short-term memory, difficulty concentrating, irritability, and social isolation. Ms. Cotton concluded that plaintiff would be unable to meet most competitive standards in performing unskilled labor, but that she could interact satisfactorily with others. Ms. Cotton opined that plaintiff's symptoms had been present since July 2020.

In her second medical opinion, dated June 5, 2023, Ms. Cotton assessed overall fewer limitations than in her previous opinion, but still assessed plaintiff as limited in her ability to meet competitive standards for unskilled labor. (Tr. 3796-99.) In this opinion, Ms. Cotton listed the "earliest date" of plaintiff's symptoms as "2021." (Tr. 3799.) In both opinions, Ms. Cotton opined that plaintiff would miss four or more days of work a month.

The ALJ was unpersuaded by Ms. Cotton's opinions because her treatment notes did not "document mental status examination findings supportive of these limits." (Tr. 30.) The ALJ concluded that the limitations assessed by Ms. Cotton were inconsistent with mental status examinations at both consultative examinations. (Tr. 30, citing Tr. 2783-2787, 2788-2800.) Also observed by the ALJ was that Ms. Cotton's opinion was inconsistent with plaintiff's daily activities, including "her ability to care for her mother into mid-2022," her ability to "shop, go out alone and clean and cook for her husband as reported." (Tr. 30.) Finally, the ALJ noted a statement from plaintiff's daughter, which indicated plaintiff was able to "shop, stay[] in touch with people, and going out alone." (Tr. 30.)

The ALJ's use of plaintiff's daily activities was improper, because, as discussed above, the analysis of the daily activities was flawed. Ultimately, however, the ALJ did not err in finding Ms. Cotton's opinions unpersuasive because he supported his conclusions with other evidence. For example, Ms. Cotton's treatment notes do not document that plaintiff's symptoms are as limiting as the ones given in her medical opinions. (*See, e.g.*, Tr. 2193-2198; 2199-2204; 2205-2210.) Indeed, treatment notes from Ms. Cotton are limited and do not contain clinical observations or notes regarding plaintiff's conditions. Instead, the treatment notes minimally mention the amount of time spent with plaintiff and any medication changes made. Nor does Ms. Cotton support with clinical findings her assessment that plaintiff will miss four days of work per month. Also, Ms. Cotton's different onset dates for symptoms lack explanation for the discrepancy. (Tr.2806, 3799.). The Ninth Circuit has held that an ALJ may discount a medical opinion if it is supported by little to no explanation and where treatment records are inconsistent with the limitations assessed. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Therefore, the ALJ did not err in finding Ms. Cotton's opinions unpersuasive.

In summary, the ALJ's conclusions as to plaintiff's symptom testimony and the medical opinions are based on substantial evidence and supported by reasonable references drawn from the record.

## CONCLUSION

For the above reasons, the court AFFIRMS the Commissioner's final decision.

IT IS SO ORDERED.

ORDERED: October 22, 2024.

_____
JEFF ARMISTEAD
United States Magistrate Judge

Page 13 – OPINION AND ORDER